**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **LABORERS' PENSION FUND, and** ) | |
| **LABORERS' WELFARE FUND OF THE** ) | |
| **HEALTH AND WELFARE DEPARTMENT** ) | |
| **OF THE CONSTRUCTION AND GENERAL** ) | |
| **LABORERS' DISTRICT COUNCIL OF** ) | |
| **CHICAGO AND VICINITY, and LABORERS'** ) | |
| **DISTRICT COUNCIL RETIREE HEALTH** ) | |
| **AND WELFARE FUND, and CATHERINE** ) | |
| **WENSKUS, Administrator of the Funds,** ) | |
| **and THE CONSTRUCTION AND** ) | |
| **GENERAL LABORERS' DISTRICT** )     **No. 16 C 8043** | |
| **COUNCIL OF CHICAGO AND VICINITY,** ) | |
| )     **Judge Rebecca R. Pallmeyer** | |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | |
| ) | |
| **MURPHY PAVING AND SEALCOATING, INC.,** ) | |
| **an Illinois corporation, and MICHAEL MURPHY,** ) | |
| **individually,** ) | |
| ) | |
| **Defendants.** ) | |

## <u>MEMORANDUM ORDER AND OPINION</u>

Plaintiff Construction and General Laborers' District Council of Chicago and Vicinity ("District Council"), a labor organization, filed two separate grievances against Defendant Murphy Paving and Sealcoating, Inc. ("Murphy Paving") for alleged violations of the parties' collective-bargaining agreement. The District Council alleged in the first grievance, filed in 2015, that Murphy Paving failed to pay contractually-required wages and fringe benefits, and in the second grievance, filed in 2018, that Murphy Paving violated the terms of a Side Letter agreement with the District Council, again by failing to pay proper wages and benefits. As authorized by their collective-bargaining agreement, a joint grievance committee heard these grievances and ruled in favor of the District Council on both of them. In Counts V and VI of its first amended complaint[1]

---

[1]     Laborers' Pension Fund, Laborers' Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity, and Laborers' District Council Retiree Health and Welfare Fund (collectively "the Funds") are also

[76], Plaintiff District Council seeks judicial enforcement of these two joint grievance committee awards pursuant to Section 301 of the Labor Management Relations Act ("LMRA"). *See* 29 U.S.C. § 185. Plaintiff District Council now moves for summary judgment on Counts V and VI. For the following reasons, Plaintiff's motion for summary judgment [89] is granted.

## BACKGROUND

### I. Compliance with Local Rule 56.1

The court addresses, as an initial matter, certain issues related to the parties' Local Rule 56.1 statements of material fact. *See Stevo v. Frasor*, 662 F.3d 880, 887 (7th Cir. 2011) ("[D]istrict judges are entitled to insist on strict compliance with local rules designed to promote the clarity of summary judgment filings."). Northern District of Illinois Local Rule 56.1 requires a party moving for summary judgment to submit a statement of facts "as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgment as a matter of law." N.D. Ill. L.R. 56.1(a)(3). Pursuant to this rule, "[a]ll material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party." N.D. Ill. L.R. 56.1(b)(3)(C). Defendant Murphy Paving responded to the District Council's statement of facts and disputed several statements. (Def.'s Resp. to Pl.'s Statement of Facts ("Def.'s SOF Resp.") [106].) Defendant did not, however, support any of its disagreements with "references to the affidavits, parts of the record, and other supporting materials relied on" as required to comply with Local Rule 56.1. *See* N.D. Ill. L.R. 56.1(b)(3)(B). Accordingly, all of Plaintiff's properly-supported statements of fact are deemed admitted. The court will discuss the specific implications of these admissions below.

An opposing party who chooses to submit additional facts that he believes require the denial of summary judgment must include with these statements "references to the affidavits, parts of the record, and other supporting materials relied upon." N.D. Ill. L.R. 56.1(b)(3)(C).

Plaintiffs in this action but Counts V and VI are brought just by the District Council. For this opinion, involving Counts V and VI, the court refers to the District Council as the sole Plaintiff.

Murphy Paving's Statement of Additional Facts [105] cites to exhibits that were not attached—a settlement agreement and a JGC hearing transcript—and that were not otherwise in the record. Plaintiff ultimately amended its own statement of facts and included in the record the documents cited by Murphy Paving. As the court may consider any materials in the record when deciding a motion for summary judgment, the court will reference the settlement agreement and hearing transcript as necessary, but does not credit any assertions in in Murphy Paving's statement of facts that are unsupported by record evidence. *See* FED. R. CIV. P. 56(c)(3).[2]

## II.     The Wage and Fringe Benefits Grievance

Murphy Paving and the District Council are parties to several successive collective-bargaining agreements, the most recent of which took effect on June 1, 2017. (Pl.'s Local Rule 56.1 Statement of Facts ("Pl.'s SOF") [91] ¶ 6.)  The parties' collective-bargaining agreement incorporates a Joint Agreement entered into by the District Council and the Illinois Small Pavers Association ("ISPA"), effective from June 1, 2013 through May 31, 2017. (*Id.* ¶ 7.)  The Joint Agreement contains provisions governing the terms of employment for the employees of ISPA member companies like Murphy Paving, including requirements for wages and benefit contributions. (*Id.*; Joint Agreement 2013 Art. V, Ex. C-3 to Pl.'s Am. App. to SOF [113].)  On November 11, 2015, the District Council and its affiliated Local 68 grieved Murphy Paving's failure to pay appropriate wages and fringe benefits, resulting in an audit of the wages Murphy Paving had paid to its employees from August 1, 2013 through October 31, 2015, and an audit of fringe benefits paid from August 1, 2013 through September 30, 2015. (Pl.'s SOF ¶ 9.)

The Joint Agreement includes procedures that must be used to resolve grievances between the parties concerning the interpretation or application of the agreement. (Pl.'s SOF ¶ 8;

---

[2]     The court also declines to consider Plaintiff's effort to get the "last word" concerning its own initial statement of facts. Plaintiff submitted a reply—not just to Murphy Paving's additional factual statements, but also to Murphy Paving's responses to Plaintiff's initial statement. (*Seeee* Pl.'s Local Rule 56.1 Reply [111].)  Such a submission not contemplated by this court's Local Rule 56.1 and will be disregarded.

Joint Agreement 2013 Art. XVII ¶ 1.)  Article XVII of the Joint Agreement requires that, as a first step, the employer and union attempt to negotiate an informal resolution of the dispute.  (Joint Agreement 2013 Art. XVII ¶ 1.)  If the employer and union are not able to settle the matter themselves, the union may submit a written grievance to a Joint Grievance Committee ("JGC").  (*Id.* ¶ 2.)  The JGC is composed of three employer representatives that are selected by the ISPA and three union representatives selected by the District Council.  (*Id.*)  The JGC decides the outcome of grievances by majority vote after a hearing, "provided that the Employer representatives and Union representatives shall have equal voting power."  (*Id.*)  The Joint Agreement authorizes the JGC to adopt its own rules of procedure to govern the hearings.  (*Id.*)  The Joint Agreement further states that "[i]f decided by majority vote, the grievance determination and any relief determined to be appropriate shall be final and binding upon all parties."  (*Id.*)  If the JGC is deadlocked, the dispute may be decided by an arbitrator at the initiation of either the union or the employer.  (*Id.* ¶ 3.)

The JGC heard the District Council and Local 68's wage and fringe benefits grievances on October 27, 2016.  (Pl.'s SOF ¶ 10.)  As directed by the Joint Agreement, the JGC was comprised of three employer representatives selected by the ISPA and three union representatives selected by the District Council.  (*Id.*; *see also* Zarris Decl. ¶ 5, Ex. B to Pl.'s Am. App. to SOF (Zarris, the Secretary of the ISPA's JGC, was present and kept minutes at the hearings).)  Michael Murphy, the president of Murphy Paving, attended the hearing on behalf of the company and was accompanied by counsel.  (Pl.'s SOF ¶ 11.)  At the end of the hearing, the JGC, by majority vote, upheld the wage and fringe benefits grievances in their entirety.  (*Id.* ¶ 12.)  As a result, Murphy Paving was required to pay $11,987,749.00 in unpaid fringe benefits, wages, union dues, interest, liquidated damages, and audit costs from the fringe benefit and wage audits.  (*Id.*)  Murphy Paving has since paid just $286,183.25 in wages and $98,299.42 in fringe benefits.  (*Id.* ¶ 15.)

In January 2018, the District Council and Murphy Paving entered into a settlement agreement related to the wage portion of the 2016 grievance award. (Settlement Agreement, Ex. D-1 to Pl.'s Am. App. to SOF.) Specifically, the District Council agreed to release Murphy Paving from liability for wages, from 50 percent of the liquidated damages otherwise due on the wage award, from the wage audit costs, the sums due as compensation for lost time, and the additional 10 percent liquidated damages Murphy Paving owed for failing to pay the JGC award within 10 days. In return for these concessions, Murphy Paving agreed to meet three requirements. First, Murphy Paving agreed to pay $489,999.95 in three installments, the last due on December 31, 2018. (*Id.* ¶ 2.) Second, Michael Murphy signed a declaration agreeing to indemnify the Funds and the District Council for benefit or wage claims against them for work performed during the audit period, and confirming that all employees other than those involved in the grievance had been paid correctly during the audit period. (Murphy Decl., Ex. D-2 to Pl.'s Am. App. to SOF.) Third, Murphy Paving agreed to enter into a new collective-bargaining agreement with the District Council. (Settlement Agreement ¶ 3.) According to Martin Flanagan, the District Council's Assistant Business Manager and Director of Grievances, on January 18, 2018, Murphy Paving made a $200,000 payment for wages owed, and $7,500 in associate dues were deducted from those wages. (Flanagan Suppl. Decl. ¶ 7, Ex. D to Pl.'s Am. App. to SOF.) Murphy Paving has made no other payments in satisfaction of the settlement agreement. (*Id.*)

### III. The Side Letter Grievance

On June 1, 2017, the District Council and ISPA entered into a new Joint Agreement. (Pl.'s SOF ¶ 17.) Included in the 2017 Joint Agreement is a "Residential Paving and Pavement Maintenance Side Letter of Agreement" ("Side Letter") that allows contractors to pay lower wages for certain residential asphalt work and excludes certain pavement maintenance work from the Joint Agreement's coverage. (*Id.* ¶¶ 18–19.) Murphy Paving was eligible to operate under that Side Letter prior to June 29, 2018. (*Id.* ¶ 19.) The 2017 Joint Agreement's relevant dispute resolution procedures are the same as those that appear in the 2013 Joint Agreement (*see* Joint

Agreement 2017, Ex. C-6 to Pl.'s Am. App. to SOF), and on April 27, 2018 the District Council grieved Murphy Paving's failure to comply with certain wage and fringe benefit requirements of the Side Letter. (Pl.'s SOF ¶ 20.) The JGC heard this grievance on June 29, 2018, and again, the District Council asserts, the JGC was comprised of three employer representatives selected by the ISPA and three union representatives selected by the District Council. (*Id.* ¶ 21.) Michael Murphy attended the hearing on behalf of Murphy Paving, along with the company's counsel, Mr. Jeffrey Scolaro. (*Id.* ¶ 22; *see also* JGC 2018 Hearing Tr: 3:14–4:18, Ex. E to Pl's Am. App. to SOF.) The hearing transcript shows that Murphy Paving's counsel made numerous objections to the procedures used during the hearing and to some evidence that was introduced. (*See* JGC 2018 Hearing Tr.) After the hearing, the JGC decided by majority vote to uphold the grievance in its entirety, which meant that Murphy Paving was no longer eligible to use the terms of the Side Letter. (Pl.'s SOF ¶ 23.)

## IV.    The Current Litigation

In this court, Plaintiff District Council and the Plaintiff Funds bring a seven-count complaint related to Defendant Murphy Paving's alleged failure to make the wage, fringe benefit, and union dues payments required by its collective-bargaining agreement. Relevant here, the District Council brings Counts V and VI under Section 301 of the LMRA, which allows district courts to hear "[s]uits for violation[s] of contracts between an employer and a labor organization." 29 U.S.C. § 185(a). In Count V, Plaintiff District Counsel seeks to enforce the 2016 joint grievance committee award regarding the wage and fringe benefit payments. In Count VI, Plaintiff District Council seeks enforcement of the 2018 joint grievance committee award holding that Murphy Paving is no longer eligible to use the more favorable terms contained in the Side Letter.

## <u>LEGAL STANDARD</u>

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The court "view[s]

the record in the light most favorable to [the nonmoving party], and draw[s] all inferences in his favor." *Petties v. Carter*, 836 F.3d 722, 727 (7th Cir. 2016). Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322; FED. R. CIV. P. 56(c). In such situations, there is no issue for trial because a "dispute about a material fact is 'genuine'" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## DISCUSSION

Plaintiff District Council argues that it is entitled to enforcement of the two joint grievance committee awards as a matter of law because the JGC hearings fully complied with the process to which Defendant Murphy Paving agreed when it signed the collective-bargaining agreement with the District Council. Defendant argues that there is a genuine issue of material fact concerning the enforceability of the 2018 settlement agreement (which reduced the amount of wages and fringe benefits that Murphy Paving otherwise owed), and that this dispute precludes summary judgment on Count V. Defendant also challenges the validity of the 2018 JGC award that Plaintiff seeks to enforce in Count VI because of various objections to the procedures used by the JGC, and to the overall fairness of the hearing. Defendant does not, however, dispute the appropriateness of the JGC's jurisdiction over these grievances, and the court notes that the first grievance (complaining of wage and benefit underpayment) and the second grievance (regarding Murphy Paving's ability to continue reliance on the Side Letter) are claims clearly governed by the collective-bargaining agreement. *See Laborers' Pension Fund v. Sanchez Paving Co.*, No. 10 C 2401, 2014 WL 1646922, at *4 (N.D. Ill. Apr. 23, 2014).

## I. Enforcement of the October 2016 Joint Grievance Committee Award

After a hearing in 2016, a majority of the JGC voted to uphold a grievance that the District Council and its affiliated Local 68 filed against Murphy Paving regarding wages and fringe benefits

that were underpaid from August 2013 to October 2015. As a result of the joint committee decision, Murphy Paving was required to pay nearly $12 million, divided among the District Council, the Funds, and specified employees. Count V seeks enforcement of the 2016 JGC award. Plaintiff contends that Murphy Paving received the grievance hearing process to which it was entitled under the terms of the collective-bargaining agreement, and so the joint committee decision must be enforced. Murphy Paving does not raise any procedural challenges to the October 2016 joint committee hearing.[3] Instead, Murphy Paving argues that there is a genuine issue of material fact regarding the amount that Plaintiff is entitled to recover because in January 2018 the parties entered into a settlement agreement that reduced Murphy Paving's monetary obligations on the wage portion of the JGC award. (*See* Settlement Agreement.) Plaintiff responds that because Murphy Paving failed to comply with the terms of the settlement agreement, Plaintiff has not released Murphy Paving from liability for the October 2016 JGC award, and may enforce the full award.[4] The court agrees. Because the unambiguous language

---

[3] In its response to Plaintiff's Local Rule 56.1 Statement of Facts, Murphy Paving asserts that it did not receive the process to which it agreed in the collective-bargaining agreement because no representative from Local 68 attended the 2016 hearing. (Def.'s SOF Resp. ¶¶ 9–11 ("Local 68 did not participate in the November 11, 2015, grievance and, therefore, any 2015 Grievance was not held according to provisions of the JGC, as set forth in the operative CBA.").) The collective-bargaining agreement does state that "[g]rievances shall be dismissed if the grievant fails to appear at the scheduled hearing and no continuance is granted by the JGC," and the grievances were not dismissed, despite Local 68's alleged absence. (Joint Agreement 2017 Art. XVII ¶ 2.) But the court will disregard this factual disagreement and any of its legal implications because Murphy Paving provides no citation to the record in support of its assertion that a representative of Local 68 was absent from the hearing, *see* N.D. Ill. L.R. 56.1(b)(3)(B)–(C), nor has Murphy Paving argued anywhere in its brief that the absence of a Local 68 representative made the JGC's 2016 decision fatally flawed. *See Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 382 n.2 (7th Cir.2008) ("It is inappropriate to make legal arguments in a Rule 56.1 statement of facts."). Murphy Paving has also not explained whether the absence of particular Local 68-affiliated witnesses was prejudicial. *See Long v. Teachers' Ret. Sys. of Illinois*, 585 F.3d 344, 349 (7th Cir. 2009) ("[U]nsupported and underdeveloped arguments are waived.").

[4] In its reply brief, Plaintiff briefly argues that Murphy Paving's fraud in the inducement and fraudulent misrepresentations should render the whole settlement agreement void and unenforceable. (Pl.'s Reply [112] at 6.) The court declines to address this contention for two reasons. First, Plaintiff provides no citations or factual support for this argument. *See Long*, 585 F.3d at 349 ("[U]nsupported and underdeveloped arguments are waived."). Second,

of the settlement agreement only requires the District Council to release Murphy Paving from liability on the wage portion of the JGC award if Murphy Paving complied with three conditions, and Murphy Paving has not complied with those conditions, the District Council is entitled to enforce the full 2016 JGC award as a matter of law.

"State contract law governs issues concerning the formation, construction, and enforcement of settlement agreements."[5] *Beverly v. Abbott Labs.*, 817 F.3d 328, 333 (7th Cir. 2016). Murphy Paving and the District Council's settlement agreement contains an Illinois choice-of-law provision, and neither party disputes the applicability of Illinois law. (Settlement Agreement ¶12.) Under Illinois law, a court's "primary objective" in construing a contract "is to give effect to the intention of the parties," looking first "to the language of the contract itself." *Thompson v. Gordon*, 241 Ill. 2d 428, 441, 948 N.E.2d 39, 47 (Ill. 2011). Contracts are read "as a whole, viewing each provision in light of the other provisions," rather than "viewing a clause or provision in isolation." *Id.* at 441, 948 N.E.2d at 47. A court must assume that every provision was inserted purposefully, and "will not interpret a contract in a manner that would nullify or render provisions meaningless." *Id.* at 442, 948 N.E.2d at 48. If the words in a contract "are clear and unambiguous, they must be given their plain, ordinary, and popular meaning." *Id.* at 441, 948 N.E.2d at 47. If the language, however, is ambiguous, a court may "consider extrinsic evidence to determine the parties' intent." *Id.* at 441, 948 N.E.2d at 47. Language is ambiguous if it is "susceptible to more than one meaning," but a contract is not ambiguous "merely because the parties disagree on its meaning." *Thompson*, 241 Ill. 2d at 442, 948 N.E.2d at 48.

---

"arguments raised for the first time in a reply brief are waived." *Wonsey v. City of Chicago*, 940 F.3d 394, 398 (7th Cir. 2019).

[5]     Under Illinois law, the "construction of a contract presents a question of law," *Gallagher v. Lenart*, 226 Ill. 2d 208, 219, 874 N.E.2d 43, 50 (Ill. 2007), that is "particularly suited to disposition by summary judgment." *Metalex Corp. v. Uniden Corp. of Am.*, 863 F.2d 1331, 1333 (7th Cir. 1988).

Murphy Paving and the District Council entered into the settlement agreement in January 2018 for the purposes of "partially resolv[ing] the outstanding JGC Award as it pertains to the wage audit and all associated fees and costs" only; no other portion—for example, related to fringe benefits—was affected by the settlement. (Settlement Agreement at 1.) In the settlement, the parties agreed that Murphy Paving would pay $489,999.95 "to resolve wages and wage audit costs" for the period of January 1, 2013 through October 31, 2015. (*Id.* ¶ 1.) The agreement requires three payments, the first due on the date the agreement was signed, the second due on August 1, 2018, and the third due on December 31, 2018. (*Id.*) The agreement also required Michael Murphy to submit to the District Council a Declaration and Agreement of Indemnification (*id.* ¶ 2), and required Murphy Paving itself to enter into a new collective-bargaining agreement with the District Council. (*Id.* ¶ 3.) In exchange, the District Council agreed to partially "release [Murphy Paving] for liability owed pursuant to Grievance Number 15-124 and the JGC Award." (*Id.* ¶ 4.)

The District Council argues that receipt of the $489,999.95 settlement amount, the indemnification agreement, and newly executed collective-bargaining agreements are conditions precedent to its agreement to release Murphy Paving for liability on the JGC wage award. A condition precedent is "an act that must be performed or an event that must occur before a contract becomes effective or before one party to an existing contract is obligated to perform." *Cathay Bank v. Accetturo*, 2016 IL App (1st) 15278366 ¶ 32, N.E.3d 467, 476. Conditions precedent "are generally disfavored." *Navarro v. F.D.I.C.*, 371 F.3d 979, 981 (7th Cir. 2004). Accordingly, if a court has doubts "about whether a contract contains a condition precedent," it should favor "interpretations that reduce the risk of forfeiture." *Id.* (citing *Restatement (Second) of Contracts* § 227(1) (1981)). Courts applying Illinois law "do not construe a contract to have a condition precedent unless there is language in the instrument that is unambiguous or the intent to create such a condition is apparent from the face of the agreement." *Homeowners Choice, Inc. v. Aon Benfield, Inc.*, 938 F. Supp. 2d 749, 758 (N.D. Ill. 2013) (quotation omitted); *see also*

*Catholic Charities of Archdiocese of Chicago v. Thorpe*, 318 Ill. App. 3d 304, 308, 741 N.E.2d 651, 653 (1st Dist. 2000). "Conditions precedent are generally indicated by the terms 'on the condition,' 'subject to,' 'when,' 'as soon as,' or other similar terms." *Chicago Graphic Arts Health & Welfare Fund v. Jefferson Smurfit Corp.*, No. 94 C 1957, 1995 WL 579538, at *7 (N.D. Ill. Sept. 28, 1995) (quotation omitted).

The court agrees with the District Council that the parties' settlement agreement contains three conditions precedent to the District Council's obligation to release Murphy Paving from liability on the wage portion of the 2016 JGC award. The contract contains unambiguously conditional language: "This Agreement is conditioned on and subject to the receipt by the District Council of a Signed Declaration and Agreement of Indemnification to support revision of the audits by Murphy." (Settlement Agreement ¶ 2.) The agreement "is further conditioned on and subject to receipt by the District Council of a new Independent Construction Industry Collective Bargaining Agreement signed by Murphy." (*Id.* ¶ 3.) The language in these two provisions unambiguously makes receipt of a declaration of indemnification and execution of a new collective-bargaining agreements conditions precedent to any release of liability. *See Jefferson Smurfit*, 1995 WL 579538, at *7.

The requirement that Murphy Paving pay $489,999.95 is not as clearly expressed as a condition precedent, but construed together with the rest of the agreement, the contractual intent is unambiguous. *See Thompson*, 241 Ill. 2d at 441, 948 N.E.2d at 47. The agreement states that Murphy Paving "shall" pay $489,999.95 to "resolve wages and wage audit costs due pursuant to the wage audit." (Settlement Agreement ¶ 1.) This creates a mandatory requirement to pay the stated amount. *See Kingdomware Techs., Inc. v. United States*, 136 S. Ct. 1969, 1977 (2016) ("Unlike the word 'may,' which implies discretion, the word 'shall' usually connotes a requirement."). The agreement goes on to say that

> As consideration for and *upon receipt* of the amounts and actions detailed in paragraphs 1 through 3, the District Council agrees to release the Company from liability owed pursuant to Grievance Number 15-124 and the JGC Award

specifically as it relates to wages owed pursuant to the wage audit, 50% liquidated damages on the wage audit amount, wage audit costs, compensation for lost time, and 10% liquidated damages for failure to pay the JGC Award within 10 days.

(Settlement Agreement ¶ 4 (emphasis added).)  The inclusion of the words "upon receipt" in this provision confirms an intent to make each of the three requirements imposed on Murphy Paving, including payment of the full $489,999.95 amount, a mandatory condition to any release of liability. *See Cathay Bank*, 66 N.E.3d at 478 (finding that "Lender *shall* give notice to Borrower *prior* to acceleration" of the mortgage created a contractual condition precedent such that the lender had a "mandatory duty to send a notice of acceleration to [the borrower] prior to accelerating the mortgage") (emphasis added).

Plaintiff acknowledges that Murphy Paving satisfied two of the conditions required for the District Council to release it from liability for the wage portion of the 2016 JGC award.  Murphy Paving executed a new collective-bargaining agreement and Michael Murphy executed the declaration and agreement of indemnification.[6]  (Flanagan Suppl. Decl. ¶ 5; *see also* Murphy Decl.; Joint Agreement 2017.)  Plaintiff asserts, however, that Murphy Paving has not paid the full $489,999.95 it owed pursuant to the settlement agreement, and so the District Council has no obligation to release Murphy Paving from liability on the JGC award.  Specifically, the declaration of Martin Flanagan states that Murphy Paving paid $200,000 in gross wages on (or about) January 18, 2018, and $7,500 in District Council dues were deducted from these wages.  (Flanagan Suppl. Decl. ¶ 7; *see also* Ex. D-1 to Pl.'s Am. App. to SOF.)  Accordingly, Plaintiff contends, Murphy Paving still owes $289,999.95 in gross wages pursuant to the settlement agreement.  (*See id.*)  Murphy Paving claims that it "is currently making payments according to the terms of the Settlement Agreement," but cites nothing in the record to substantiate this, and no evidence of

---

[6]     Plaintiff argues in its reply brief that the information in Michael Murphy's affidavit was false because a former Murphy Paving employee claims his hours were miscoded, and he was not paid correct union wages, during the period of time covered by the affidavit.  (Pl.'s Reply at 6–7.)  Because the court grants summary judgment in favor of Plaintiff on other grounds, it declines to address this issue.

any other payments.  (Def.'s SOF [105] ¶ 3 (citing the settlement agreement, which documents no payments).)  For purposes of this motion for summary judgment, however, the crucial point is that Murphy Paving does not claim to have made all the payments required by the settlement agreement despite the fact that all payments were due by December 31, 2018.  (*See id*; Settlement Agreement ¶ 1.)  Because Murphy Paving breached the settlement agreement, the District Council need not release Murphy Paving from liability and is entitled to enforce the 2016 JGC award in its entirety.

Murphy Paving contends that summary judgment in favor of Plaintiff is nonetheless inappropriate because the amount that it owes to the District Council is disputed.  The court is not persuaded that any factual uncertainty regarding the amount Murphy Paving must pay is material to the issue of Murphy Paving's liability.  The court may not "reweigh the merits of the grievance" decided by the joint committee.  *Merryman Excavation, Inc. v. Int'l Union of Operating Eng'rs, Local 150*, 639 F.3d 286, 289 (7th Cir. 2011).  As a result, when it comes to the wages and fringe benefits Murphy Paving must pay pursuant the JGC award, the court's authority "is limited to enforcement of the award as granted by the [JGC]."  *ASC Insulation, Fireproofing, & Supplies, Inc. v. Laborers' Int'l Union Local 582*, No. 12 CV 1005, 2014 WL 1661507, at *3 (N.D. Ill. Apr. 25, 2014).  That is, the court may not reinterpret the collective-bargaining agreement to determine which damages are warranted, or add to or subtract from the amount awarded to the party who prevailed after the JGC hearing.  *See id.*

The court recognizes that the exact amount outstanding on the JGC award is not certain. Martin Flanagan stated in his declaration that Murphy Paving has paid $200,000 toward the settlement.  (Flanagan Suppl. Decl. ¶ 7.)  In its statement of facts, Plaintiff asserts that Murphy Paving has paid $286,183.25 in wages and $98,299.42 in fringe benefits.[7]  (*See* Pl.'s SOF ¶ 15.)

---

[7]  Murphy Paving disputes this fact, but only cites to the settlement agreement which does not contain any information about how much in wages and fringe benefits it paid to comply with the JGC award.  (*See* Def.'s SOF Resp. ¶ 15.)  Accordingly, Murphy Paving is deemed to have admitted to paying the amounts stated by Plaintiff.  N.D. Ill. L.R. 56.1(b)(3)(B)–(C).

It is not clear, however, whether the $286,183.25 in wages and $98,299.42 in fringe benefits that Plaintiff claims Murphy has paid is in addition to the $200,000 that Murphy Paving paid under the settlement agreement, or is instead the total amount paid. But a dispute over the unpaid award amount does not warrant denial of summary judgment on the issue of Murphy Paving's liability, and as Murphy Paving has pointed to no other evidence justifying its non-compliance with the 2016 JGC award, the court grants summary judgment in favor of Plaintiff on Count V. The amount that Murphy Paving is entitled to offset from the total $11,987,749.00 award based on past payments will be determined separately.

## II.     Enforcement of the June 2018 Joint Grievance Committee Award

The District Council also moves for summary judgment on Count VI to enforce the 2018 JGC decision to prohibit Murphy Paving from enforcing the terms of the Side Letter it negotiated with the District Council in 2017. Plaintiff argues that the court must uphold the JGC award because Murphy Paving received the dispute resolution process to which it agreed in the collective-bargaining agreement and there is no other basis for denying enforcement of the JGC decision. Pointing to several objections made by Murphy Paving's counsel during the JGC hearing, Defendant disputes that the JGC hearing complied with the procedures laid out in the collective-bargaining agreement, and therefore urges the court to deny Plaintiff's motion for summary judgment.

Judicial review of the decision of a joint grievance committee is deferential and limited in scope. "[A]s long as the parties agreed that this method of dispute resolution would be binding, it is 'not open to the courts to reweigh the merits of the grievance.'" *Merryman*, 639 F.3d at 289 (quoting *Gen. Drivers, Warehousemen & Helpers, Local 89 v. Riss & Co.*, 372 U.S. 517, 519 (1963)). That is, when the parties decide in their collective-bargaining agreement that a JGC decision will be final and binding, "all disputes involving the application or interpretation of the agreement are subject to the binding dispute resolution procedures contained in the agreement." *Merryman*, 639 F.3d at 290. In these situations, regardless of whether the joint committee's

interpretation of the collective-bargaining agreement was correct, the only argument a court may consider is that the party challenging the award "did not receive the procedures to which it agreed." *Id.* at 291 n.1; *see also Lippert Tile Co. v. Int'l Union of Bricklayers & Allied Craftsmen, Dist. Council of Wis. & Its Local 5*, 724 F.3d 939, 944 (7th Cir. 2013) ("[A] court is not to rule on the potential merits of the underlying claims, even if it appears to the court to be frivolous.") (quotation and alterations omitted).

Article XVII of the Joint Agreement sets out the process the parties must use to settle disputes over the interpretation or application of the agreement. (*See* Joint Agreement 2017 Art. XVII.) The JCG must include three employer representatives selected by the ISPA and three union representatives selected by the District Council, and is authorized to adopt its own rules of procedure. (*Id.*) The committee resolves grievances by majority vote, "provided that the Employer representatives and Union representatives [ ] have equal voting power." (*Id.*) The parties also agree that, if decided by majority vote, "the grievance determination and any relief determined to be appropriate shall be final and binding." (*Id.*)

## A. Procedures in the JGC Hearing

In this court, as before the JGC during the hearing, Murphy Paving challenges the manner in which the JGC conducted the hearing. First, Murphy Paving objects that the District Council was permitted to introduce information related to the 2016 JGC hearing involving Murphy Paving and the District Council. Murphy Paving contends the information from that earlier hearing was irrelevant and prejudicial. (Def.'s Resp. [107] at 4.) Second, Murphy Paving argues that the JGC improperly allowed the District Council to introduce evidence that was not included in the Side Letter grievance, as well as a secret recording, and that this evidence was not produced to Murphy Paving until shortly prior to the hearing. (*Id.*) Third, Murphy objects to the District Council's failure

to produce allegedly essential witnesses, even though Murphy Paving had requested their presence at the hearing.[8] (*Id.*)

The court finds that these objections are not sufficient to invalidate the JGC award for two reasons. First, the only issue for the court's review is whether Murphy Paving received the procedures to which it agreed, and the collective-bargaining agreement itself contains no procedural or evidentiary provisions providing a legal basis for Murphy Paving's objections. Second, the agreement grants the JGC authority to adopt its own rules of procedure (*see* Joint Agreement 2017 Art. XVII ¶ 2), but "those separate procedural rules do not form a part of the agreement" between the District Council and Murphy Paving. *Merryman*, 639 F.3d at 291. In any case, the evidentiary and procedural rules in effect at the time of Murphy Paving's hearing described only who may address the committee and who may interrogate parties to the grievance. (*See* JGC Rules, Ex. D-4 to Pl.'s Am. App. to SOF.) Accordingly, Murphy Paving's objections do not even identify plain violations of the JGC's procedural rules. Because these objections do not identify violations of the procedures to which Murphy Paving agreed, they are not a justiciable challenge to the committee's decision. *See ASC Insulation*, 2014 WL 1661507, at *3 ("Claims that alternative resolution measures were untimely or procedurally defective are left to the contractually-appointed decision-making authority.") (citations omitted).

Murphy Paving's challenge to the process preceding the hearing similarly does not merit denying Plaintiff's motion for summary judgment. Murphy Paving explains that it sent an email requesting the rules governing the hearing process prior to the June 2018 hearing date, but counsel for the District Council never provided the rules.[9] The parties dispute the circumstances

---

[8]    Murphy Paving does not identify these witnesses or explain what they would have said, had they testified. The hearing transcript shows that Murphy Paving at least requested that Leonardo Orocio attend the hearing. (JGC 2018 Hearing Tr. 64:11–22.) Orocio is a former Murphy Paving employee who submitted a declaration stating that his work had been miscoded and that he had not been paid proper wages. (Orocio Decl., Ex. E-3 to Pl.'s Am. App. to SOF.)

[9]    Murphy Paving does not identify in its brief the rules with which it was unfamiliar, but Murphy Paving's counsel did object during the hearing that he was not notified that he would

surrounding this email. Plaintiff attaches the text of the email and notes that defense counsel asked for a copy of the rules "should any JGC rules have changed" since the parties entered into a new collective bargaining agreement in 2017. (Scolaro Letter at 3, Ex. F to Pl.'s Am. App. to SOF.) And while Plaintiff's counsel concedes that she did not respond to the written request for the hearing rules, she claims that an email response was not necessary because the rules in effect for the 2018 hearing had not changed since 2016, so defense counsel already had notice of the rules governing the proceeding. In any case, Plaintiff's counsel stated during the 2018 hearing that she and Defendant's counsel discussed the rules in person prior to the hearing date. (JGC 2018 Hearing Tr. 10:1–8.) The court concludes that this dispute is ultimately immaterial. The collective-bargaining agreement contains no requirement that the parties involved in a grievance hearing receive advance notice of the procedures governing the hearing. *See Merryman*, 639 F.3d at 291 ("A collective bargaining agreement could lay out detailed procedural rules for joint committee hearings, but *this* agreement does not."). And while the absence of such a requirement may seem unusual, the question on review of the JGC decision is whether Murphy Paving received the process to which it agreed. *See, e.g., Painters' Dist. Council No. 30 v. Rock-It Interiors, Inc.*, 190 F. Supp. 3d 803, 809 (N.D. Ill. 2016) ("Although it may seem commonsensical that Rock-It should be entitled to notice of a Board hearing or decision, the right must nevertheless be grounded in some legal source, whether statutory, contractual, constitutional, or otherwise."). Notice of the hearing rules was not contractually required and therefore is not a basis upon which this court could invalidate the JGC award.

Murphy Paving also questions the District Council's compliance with the pre-hearing grievance process. Specifically, Defendant complains that, during the hearing, the District Council

---

be unable to talk during the hearing. (JGC 2018 Hearing Tr. 9:1–9.) Murphy Paving's counsel asserted that this unfairly denied Murphy Paving of counsel (*id.* 12:3–4), but as the court discusses below, the collective-bargaining agreement creates no right to representation by counsel during JGC hearings. During the hearing, Ms. Wernick responded that Mr. Scolaro had been told in the 2016 hearing that he could not address the committee directly, and the rules had not changed since that time. (*Id.* 10:1–18.)

introduced matters that had not been properly grieved as required by the CBA.[10]  (*See* Def.'s Resp. at 4.)  The Seventh Circuit in *Merryman* considered and rejected a similar argument that the union failed to follow the steps required by the CBA before bringing a grievance to the joint committee.  The court explained that "[a] challenge to the pre-grievance procedures approved by the joint committee, [ ] is a claim or dispute involving an interpretation or application of the Agreement and therefore subject to binding resolution by the joint committee."  *Merryman*, 639 F.3d at 291 (quotation omitted).  Here, as well, whether a matter has been properly grieved, and therefore whether it is properly before the committee, depends on an interpretation of the collective-bargaining agreement between the District Council and Murphy Paving.  The collective-bargaining agreement states that such disputes are subject to binding resolution by the JGC. (Joint Agreement 2017 Art. XVII ¶ 2.)  Because nothing in the record indicates that "the joint committee was [not] properly composed, it had the authority to resolve the dispute" over whether the matters introduced to the hearing by the District Council had been properly grieved, and the court will not review the merits of this determination.

Murphy Paving attempts, in its response to Plaintiff's statement of facts, to challenge the composition of the joint committee.  Specifically, Defendant disputes Plaintiff's assertion that the ISPA selected three employer representatives for the JGC as required by the collective-bargaining agreement.  (*See* Zarris Decl. ¶ 5.)  Plaintiff has not identified the ISPA-selected representatives, nor how they were chosen, but Defendant, itself a member of ISPA, presumably could obtain the information.  Instead, Defendant has denied Plaintiff's assertion but has offered, in support, no "specific references to the affidavits, parts of the record, and other materials relied

---

[10]     Murphy Paving does not identify in its brief which matters were not properly grieved.  During the hearing, Mr. Scolaro objected to Ms. Wernick's statement that Murphy Paving had engaged in "fraud" exceeding $2 million, which from the transcript appears to refer to underpaid wages and benefits.  (JGC 2018 Hearing Tr. 7:13–8:2, 9:10–16.)  The $2 million figure had not been grieved, nor was there an audit substantiating that sum (*id.*), but it appears that Ms. Wernick introduced the figure to show that Murphy Paving had violated the terms of the Side Letter, not to request a monetary award.  (*Id.* 5:5–7:16.)

upon" as required by the Northern District of Illinois Local Rules.  *See* N.D. Ill. L.R. 56.1(b)(3)(B).

Murphy Paving is deemed to have admitted that the ISPA selected three employer representatives, and there is no other evidence in the record contradicting Zarris's declaration. *See M.J. Elec., Inc. v. Int'l Union of Operating Eng'rs, Local 150*, No. 02 C 6541, 2003 WL 21640474, at *5 (N.D. Ill. July 10, 2003).

### B.    Considerations of Fairness and Due Process

Murphy Paving's objections to the overall fairness of the 2018 hearing are similarly uncompelling.  First, Murphy Paving makes due process arguments, but "due process requires state action," and there is "no state action arising from a [joint committee] hearing authorized by private contract."  *Rock-It Interiors*, 190 F. Supp. 3d at 809; U.S. Const. amend. XIV, § 1 ("[N]or shall any state deprive any person of life, liberty, or property without due process of law.").  Aside from the inapplicability of the due process clause, this court "has very limited authority to review procedural and substantive determinations of a JGC, even if those determinations appear fundamentally unfair."  *Sanchez Paving*, 2014 WL 1646922, at *5 (citing *Lippert Tile*, 724 F.3d at 948 (upholding a JGC award despite the "unusual" circumstance that the individual who filed the union grievance also sat on the joint committee that decided that grievance; the court observed that the parties to the CBA could have negotiated to prohibit such situations)).  This is because "Section 301 review simply does not include a free-floating procedural fairness standard absent a showing that some provision of the CBA was violated."  *Lippert Tile*, 724 F.3d at 948.

To the extent that Murphy Paving challenges the impartiality of the committee, the court notes that "a joint committee is not a genuine arbitration subject to the Federal Arbitration Act (FAA) and the full requirements of impartiality that apply to genuine arbitration."[11]  *Merryman*, 639 F.3d at 290.  Murphy Paving agreed that disputes would be resolved "not by a neutral arbitrator

---

[11]      Because a JGC hearing is not a genuine arbitration, the "failure to comply with a joint committee award is a breach of a federal labor contract subject to section 301 jurisdiction— not an FAA action."  *Merryman*, 639 F.3d at 290.

but by a committee composed of an equal number of employer and union representatives." *Id.* at 292. The collective-bargaining agreement "does not require the representatives on the joint committee to act like detached magistrates or neutral arbitrators." *Id.* Instead, the "balanced voting membership of the joint committee [provides] fairness to the interested parties." *Id.* Because Murphy Paving provides no evidence that it was not equally represented on the committee, nor that any of the employer representatives were biased against it,[12] *id.* at 292 n.5, it appears that Murphy Paving received the representation on the committee to which it agreed by contract.

Finally, Murphy Paving contends that the hearing was fundamentally unfair because the District Council was represented by counsel who argued on its behalf during the hearing while Murphy Paving's lawyer was denied the opportunity to speak for Murphy Paving, forcing Michael Murphy (a non-attorney) to argue for Murphy Paving. (Def.'s Resp. at 4.) Plaintiff responds that Murphy Paving's counsel was present at the hearing and did speak to the committee "directly and at length." (Pl.'s SOF Resp. [110] ¶ 7.) In the court's view, Plaintiff has overstated the role that Mr. Scolaro played during the hearing: Mr. Scolaro did make numerous objections directly to the committee, but the hearing transcript confirms that Mr. Scolaro was not permitted to present evidence on behalf of Murphy Paving and was told several times that he could not address the committee. (*See, e.g., id.* 8:7–8, 9:17–22.) Plaintiff is nevertheless correct, however, that Murphy Paving received the hearing process to which it agreed. The collective-bargaining agreement

---

[12]    One of the committee's union representatives, Mr. Martin Flanagan, after the committee made its decision but while the parties were still on the record, did call Mr. Scolaro and Mr. Murphy "a lying piece of garbage." (*See* JGC 2018 Hearing Tr. 66:8–12.) While uncivil, this is not the type of bias that would warrant judicial invalidation of the JGC award. Joint committee members are "'representatives' specifically chosen because they are ostensibly partisans of one side to a collective bargaining agreement," so one could expect Mr. Flanagan to be biased in favor of the Union, and nothing in the contract requires impartiality. *Merryman*, 639 F.3d at 292 n.4; *see also id.* at 288 (affirming enforcement of the joint committee decision even though one of the union representatives asked the employer's attorney: "Have you graduated from first grade? Can you read, my friend?" and "vociferously argued in favor of the union's positions throughout the hearing"). Defendant cites no evidence that any employer representative was biased against it.

contains no provision concerning representation by counsel. The JGC procedural rules state that parties to a grievance "may have present such advisors or counsel as they require, but such outside advisors or counsel may not address or question the Committee." (JGC Rules at 2.) The procedural rules further state that "[o]ral participation in Committee session shall be limited to the Committee members, the grievant and regular officials or employees of the parties to the grievance." (*Id.* at 3.) True, Christina Krivanek Wernick, in-house counsel for the District Council, appeared at the JGC hearing and argued the grievance on behalf of the District Council. (JGC 2018 Hearing Tr. 4:8–12.) Ms. Wernick participated not as counsel, however, but in her "capacity as an Employer Representative[13] and employee of the Laborers' District Council" and so was permitted to present the District Council's case. (*Id.*) In any event, the JGC's procedural rules pertaining to representation by counsel are not part of Murphy Paving's collective-bargaining agreement with the District Council, and that agreement does not create a right to counsel. Accordingly, the lack of representation by counsel does not justify Murphy Paving's failure to comply with the joint committee decision.

Murphy Paving has not demonstrated that the JGC hearing violated the CBA, and this court is "not permitted to review the merits of the procedure or substance of the joint committee's decisions," *Merryman*, 639 F.3d at 293. The court concludes the JGC's decision is binding. The District Council and the Funds are entitled to summary judgment on Count VI of their first amended complaint seeking enforcement of the 2018 JGC award.

## CONCLUSION

Murphy Paving has failed to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. Accordingly, the District Council is entitled to enforce the

---

[13]     To be clear, Ms. Wernick represented her employer, the District Council, while speaking to the committee, the reference to Ms. Wernick as "Employer Representative" should not be understood as a reference to the employer representatives who sat on the JGC.

2016 and 2018 grievance awards as a matter of law.  The District Council's motion for summary

judgment [89] on Counts V and VI of its first amended complaint is granted.


ENTER:


Dated:  March 27, 2020

REBECCA R. PALLMEYER
United States District Judge